COPY

| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
|---|---|---|
| | :SS | |
| COUNTY OF TURNER | ) | FIRST JUDICIAL CIRCUIT |

GREGG M. PETERS, NICOLE A. PETERS, and
JONES FOOD CENTER OF PARKER, INC.,
              Plaintiffs,

CIV. 05-____

vs.

COMPLAINT

ALLIED PROPERTY AND CASUALTY INS. CO.,
AMCO INSURANCE COMPANY, and
NATIONWIDE INSURANCE CO. OF AMERICA,
              Defendants.

COMES NOW, Plaintiffs, Gregg M. Peters, Nicole A. Peters, and Jones Food Center of Parker, Inc., a South Dakota corporation, by and through their attorney of record, Craig K. Thompson of Vermillion, South Dakota, and for their causes of action against the Defendants state and allege as follows:

## JURISDICTION

1. Plaintiffs, Gregg M. Peters and Nicole A. Peters, are husband and wife and live in Vermillion, South Dakota and are the owners and sole shareholders of Jones Food Center of Parker, Inc.

2. Jones Food Center of Parker, Inc. ("Jones"), is a South Dakota corporation with its principal place of business located in the City of Parker, Turner County, South Dakota.

3. Defendants, Allied Property and Casualty Ins. Co. ("Allied"), AMCO Insurance Company ("AMCO"), and Nationwide Insurance Co. of America ("Nationwide"), are Iowa corporations with their principal place of business located at 1100 Locust St., Des Moines, Iowa, 50391.



EXHIBIT 2

4. That Defendants are insurance corporations authorized to do business in South Dakota under the names of Allied Property and Casualty Ins. Co., AMCO Insurance Company, and Nationwide Insurance Co. of America.

5. That Plaintiffs' insurance policy and/or renewal thereto, references both "Allied Property and Casualty Ins. Co." and "AMCO Insurance Company," as does most, if not all, of the correspondence from said Defendants to Plaintiffs concerning this matter. Also, both Allied Property and Casualty Ins. Co. and AMCO Insurance Company are members or believed to be subsidiaries of Nationwide Insurance Co. of America.

6. That the acts or omissions out of which Plaintiffs' causes of action against the Defendants arose occurred in Turner County, South Dakota.

7. That this Court has jurisdiction over and in this matter pursuant to SDCL § 16-6-9.

## BACKGROUND INFORMATION

8. That on June 24, 2003 Plaintiff, Jones Food Center, sustained damage from a tornado.

9. That at the time of the loss, Plaintiffs carried a Premier Business Owner's Property Coverage Policy no. ACP BPR 72-1-1011283 with Defendants.

10. That the insurance policy in place provided in part, the following limits:

| | |
|---|---|
| Building - Replacement cost | $510,700 |
| Business Personal Property - Replacement cost | $302,600 |
| Business Income | Actual Loss Sustained |
| Extra Expense | Actual Loss Sustained |

11. That on July 10, 2003, APEX Structural Design, Inc. ("APEX"), hired by Defendants' claims adjustor, issued its inspection report which concluded that "[d]amage from the recent tornado activity is evident and should be immediately repaired" and that "[t]his structure presents a safety hazard to its occupants and neighbors ... "

12. That on October 17, 2003, Julian Pearson of APEX issued a follow-up report to the Defendants after reviewing proposals on repairing the Jones' building. In said report, APEX recommended that " ... it is my opinion that the building should be demolished and replaced ... "

13. That despite Plaintiffs' best efforts and good faith to resolve said claim and in light of APEX's July 10, 2003 report which stated that immediate repairs need be completed, the Defendants exerted no effort in resolving Plaintiffs' claim. As such, Plaintiffs were forced to hire an attorney on or about March 1, 2004 in order get their claim with Defendants its due attention.

14. That during the Defendants' delay in taking action on Plaintiffs' claim, Plaintiffs continued to worry about the welfare and safety of its employees and customers due to the unsafe condition of the damaged building.

15. That on April 27, 2004, contractor Tellinghuisen, Inc. ("Tellinghuisen"), at Defendants' request, issued an itemized cost breakdown for repairs to the existing building. In Tellinghuisen's estimate, they noted that they were issuing a "conservative estimate" and that there were "serious concerns about the site and building."

16. That in calculating the estimate, Tellinghuisen noted that they were "concerned about the cost for the removal and reinstallation of the refrigeration equipment" and that they "could not get anyone to commit to a cost estimate, as they would only perform the work on a Time & Material basis due to the nature of the work."

17. That Tellinghuisen also noted that they "could not guarantee the condition of the inventory if it remain[ed]" in the store and "recommend[ed] removing it from the store."

18. That due to the perishable nature of the inventory, any delay between closing the old store and opening the new store would produce significant inventory losses.

19. That on June 1, 2004, Plaintiffs entered into a Memorandum of Understanding in which Defendants set out payment terms for real estate acquisition and construction of a new building to house Jones Food Center which Memorandum included the following:

   a. That Defendants agreed to make a lump sum payment of one hundred ninety thousand five hundred fifty-seven dollars and eighty-eight cents ($190,557.88) within three days of said agreement.

   b. That Defendants agreed to pay fifteen thousand dollars ($15,000.00) for the purchase of real estate to house the new building.

   c. That Defendants agreed to make additional installment payments on the construction of a new building on a monthly basis with total payments not to exceed two hundred eighty-five thousand eight hundred thirty-six dollars and eighty-one cents ($285,836.81).

   d. That the Defendants stipulated that the insured, Plaintiffs, shall be entitled to other coverages under the policy, including but not necessarily limited to the "loss of business" and "extra expense" provisions of the policy.

   e. That Defendants agreed that Plaintiffs could choose to purchase new shelving in an effort to minimize the time the business would have to be closed. That the purchase of any such shelving would constitute "extra expense" under the policy.

   f. That Defendants waived the requirement that "extra expenses" have to be paid with in twelve (12) months of the loss.

   g. That Defendants waived the requirement that "loss of business income" had to be paid with in twelve (12) months of the loss.

   h. That Defendants waived the requirement that repairs to be made must be made on the "same premises".

   i. That Defendants extended the requirement to sue within one (1) year of actual physical loss to cover the one (1) period after said agreement.

   j. That the parties agreed that Defendants would not be responsible for the demolition of the previous building and that Plaintiffs would retain ownership of the property.

20. That at the time of said Memorandum of Understanding, extra expenses were unknown as the parties were unable to obtain an estimate regarding the removal and reinstallation of the refrigeration equipment as such work is done on a Time & Material basis due to the nature of the work.

21. That on September 10, 2005, Plaintiffs closed their old store to allow for the transition into the new store.

22. That Plaintiffs worked hard and coordinated efforts to be closed as short as possible and mitigate their losses.

23. That on September 12, 2005, Plaintiffs' new store opened.

24. That Plaintiffs kept Defendants abreast of their plan to transition from the old building to the new building and relied on the insurance contract and Defendants representations to their detriment when incurring expenses which ultimately reduced Defendants liabilities under the insurance contact.

25. That on or about October 7, 2005, Plaintiffs forwarded their claim for "extra expenses" consisting of tear down, moving and set up of, shelving, coolers, cases, and other items from the old store location to the new store location in preparation to return to full capacity. (See attached letter from Jones Food Center of Parker itemizing its "extra expense" claim labeled Exhibit 1.)

26. That said extra-expense claim of three hundred and sixty-five thousand eight hundred and seventy-nine dollars and thirty-five cents ($365,879.39) represents items which were used in connection with reducing the "business income loss" or "extra expenses" that would have otherwise been incurred.

27. That as of November 11, 2005, Plaintiffs had not received a response from Defendants and had to resort to hiring an attorney to enforce its claim under its insurance coverage.

28. That on November 14, 2005, Plaintiffs, through their attorney, sent Defendants a letter requesting immediate attention to this matter as all parties were familiar with the issue and no response had been received as to its October 7, 2005 claim.

29. That on November 22, 2005, Defendants sent a letter confirming they were in receipt of the claim.

30. That on November 23, 2005, Defendants sent a letter stating they would be unable to meet the Plaintiffs' time line.

31. That on November 28, 2005, Defendants denied Plaintiffs' claim, referenced as No. 40-A80615, stating that Plaintiffs' extra expenses "did nothing to mitigate the loss of business income" nor constituted extra expenses. As such, Defendants would allow a claim for new shelving equal to the linear feet of shelving in the previous store and for one and one half days of lost business income.

32. That Defendants have tried to restrain Plaintiffs' rights to enforce the policy by limiting the time Plaintiffs had to bring suit. Plaintiffs have six (6) years to bring suit for breach of contract under South Dakota law and any such restraint of right is against state law and public policy, yet Defendants continue to assert that a contractual statute of limitations of one (1) year bars the current "extra expense" claim. (See attached letter dated November 28, 2005 from Stan Logan, Defendants' claims representative, labeled Exhibit 2.)

33. That the Memorandum of Understanding dated June 7, 2004 specifically waived the one (1) year period for "extra expenses" and "loss of business income." (See attached Memorandum of Understanding labeled Exhibit 3.)

6

34. That prior to starting this suit, Plaintiffs contacted the Defendants on December 5, 2005 to initiate discussion on the claim but their attempt was rebuffed.

## BREACH OF INSURANCE CONTRACT

35. Plaintiffs incorporate by this reference paragraphs 1 through 30 of the Complaint as if fully set forth herein.

36. Defendants breached the contract of insurance by failing to honor the terms and condition of the contract.

37. As a direct and proximate result of that breach, Plaintiffs suffered damages.

## BREACH OF ORAL CONTRACT

38. Plaintiffs incorporate by this reference paragraphs 1 through 33 of the Complaint as if fully set forth herein.

39. Defendants breached the oral contract of insurance by failing to honor the terms and condition of that oral contract.

40. As a direct and proximate result of that breach, Plaintiffs suffered damages.

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

41. Plaintiffs incorporate by this reference paragraphs 1 through 36 of the Complaint as if fully set forth herein.

42. Defendants owed Plaintiffs a duty of good faith and fair dealing.

43. Defendants breached the duty of good faith and fair dealing by failing to resolve Plaintiffs' claim in a timely manner and by failing to provide Plaintiffs the proceeds of the contract of insurance.

44. Defendants' failure to abide by the terms of the contract and wrongfully, intentionally, and willfully ignoring the terms of the contract make Defendants guilty of bad faith as a matter of law.

45. As a direct and proximate result of the conduct of the Defendants, Plaintiffs have sustained substantial compensable losses and economic losses, such as attorney's fees, embarrassment, humiliation, and physical, mental and emotional distress and discomfort, all to Plaintiffs' detriment and damage.

## BAD FAITH

46. Plaintiffs incorporate by this reference paragraphs 1 through 41 of the Complaint as if fully set forth herein.

47. The actions of Defendant Insurers constitute bad faith as those Defendants had no reasonable basis for denying benefits and the Defendants knew and/or have recklessly disregarded the fact that they had no reasonable basis to deny benefits.

48. As a direct and proximate result of the conduct of the Defendants, Plaintiffs have sustained substantial compensable losses and economic losses, such as attorney's fees, embarrassment, humiliation, and physical, mental and emotional distress and discomfort, all to Plaintiffs' detriment and damage.

## INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

49. Plaintiffs incorporate by this reference paragraphs 1 through 44 of the Complaint as if fully set forth herein.

50. At all times material hereto, Defendants knew that Plaintiffs were relying on Defendants to pay the benefits under the policy of insurance. Despite the fact, Defendants have refused to pay Plaintiffs the policy proceeds.

51. The actions of the Defendants are outrageous and intended to inflict severe emotional distress upon Plaintiffs.

52. As a result of Defendants' actions, Plaintiffs have suffered mental anguish and stress, all of which have affected Plaintiffs' well being and welfare.

53. As a direct and proximate result of the conduct of the Defendants, Plaintiffs have sustained substantial compensable losses and economic losses, such as attorney's fees, embarrassment, humiliation, and physical, mental and emotional distress and discomfort, all to Plaintiffs' detriment and damage.

## NEGLIGENCE

54. Plaintiffs incorporate by this reference paragraphs 1 through 49 of the Complaint as if fully set forth herein.

55. In the alternative, Defendants negligently handled the Plaintiffs' claim.

56. Defendants further negligently and unduly delayed the claims process.

57. As a direct and proximate result of the conduct of the Defendants, Plaintiffs have sustained substantial compensable losses and economic losses, such as attorney's fees, embarrassment, humiliation, and physical, mental and emotional distress and discomfort, all to Plaintiffs' detriment and damage.

## NEGLIGENT MISREPRESENTATION

58. Plaintiffs incorporate by this reference paragraphs 1 through 53 of the Complaint as if fully set forth herein.

59. In the alternative, Defendants misrepresented the manner in which Plaintiffs were to proceed during the time of the loss to the opening of the new store and that Plaintiffs relied on Defendants' representations to their detriment.

60. As a direct and proximate result of the conduct of the Defendants, Plaintiffs have suffered compensable losses and economic losses, such as attorney's fees, embarrassment and

9

humiliation, as well as physical distress, severe mental and emotional distress, and discomfort, all to Plaintiffs' detriment and damage.

**WAIVER AND ESTOPPEL**

61. Plaintiffs incorporate by reference paragraphs 1 through 56 of the Complaint as if fully set forth herein.

62. Plaintiffs relied upon the representations of Defendants as to the manner in which to operate in the time between the loss and the opening of a new store.

63. Further, Defendants waived the issue regarding the contractual statute of limitations by the laws of South Dakota and by its acts and statements, both oral and written.

64. Defendants are estopped from relying on the provision of the policy as to deny benefits as their actions were inconsistent with the language therein.

65. Defendants are further estopped from relying on the provision of the policy which limits its policy holders time with which an action can be brought as it is contrary to public policy and State law as cited in SDCL 53-9-6.

66. As a direct and proximate result of the conduct of the Defendants, Plaintiffs have sustained substantial compensable losses and economic losses, such as attorney's fees, embarrassment, humiliation, and physical, mental and emotional distress and discomfort, all to Plaintiffs' detriment and damage.

**ATTORNEY FEES**

67. Defendants have refused, without reasonable cause, to pay the policy benefits and therefore Plaintiffs are entitled to its attorney fees pursuant to SDCL § 58-12-3.

## EXEMPLARY DAMAGES

68. Defendants' acts; which include but are not limited to wrongfully failing to properly process Plaintiffs' claim and failing to honor the terms of the contract; were fraudulent, oppressive, malicious, willful, wanton, and a total and reckless disregard of the rights of the Plaintiffs. Defendants knew full well that Plaintiffs were entitled to the proceeds of the policy.

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

1. For compensatory damages, including special and general damages as may be proven at trial, representing an amount which sufficiently and fairly compensates Plaintiffs for all the general damages flowing from the incident alleged in the Complaint;

2. For exemplary damages;

3. For Plaintiffs' costs and disbursements, including attorney fees pursuant to SDCL § 58-12-3 or otherwise may be allowed by law;

4. For pre-judgment and post-judgment interest; and

5. For such other relief the Court may deem just and equitable.

### PLAINTIFFS DEMAND TRIAL BY JURY.

Dated this 16 day of December, 2005.

*/s/ Craig K. Thompson*
Craig K. Thompson
Attorney for Plaintiffs
P.O. Box 295
Vermillion, SD 57069
(605) 624-2097

### NOTICE OF APPEARANCE

Craig K. Thompson, duly licensed and practicing attorney in the State of South Dakota, hereby notes his appearance on behalf of the Plaintiffs, Gregg M. Peters, Nicole A. Peters, and Jones Food Center of Parker, Inc.

Dated this 16 day of December, 2005.

*/s/ Craig K. Thompson*
Craig K. Thompson

11

 **Jones' Food Center**
Vermillion, Parker, Elk Point, & Viborg, South Dakota

**MAIN OFFICE**
812 Cottage Avenue • Vermillion, SD 57069
Phone: 605-624-2624 • Fax: 605-624-2743

 **Ace Hardware** Madison & Vermillion

Stan Logan
RE: Final Claim on Parker Jones Food Center

Stan:

We are pleased to report we are open at the new location. We were able to re-open the store with only being closed for a day and a half. Therefore, we are not making a claim for loss of business expense. Attached please find all of the bills for the extra expense of moving the store. Should you have any questions please call me.

T.J. Paige Construction: Tear down of back room equipment and moving from Econo Foods. Purchased walk-in coolers and compressors from Econo Foods in Sioux Falls in order to keep the old store running while preparing the new store to open. Set up of new store shelving, coolers, cases and moving.

|  |  |  |
|---|---|---|
|  | T.J. PAIGE | $ 9,131.37 |
|  | Graffe Auction | $ 35,230.80 |
|  |  | $ 10,656 42 |

Set up of store systems for grocery operation – refrigeration, plumbing, electrical.

|  |  |  |
|---|---|---|
|  | Electric Construction | $ 71,440.00 |
|  | Clean Plumbing | $ 33,900.00 |
|  | Carlson Stewart Refrigeration | $114830.34 |

Shelving and refrigeration cases:

|  |  |  |
|---|---|---|
|  | Lozier | $ 28,566.57 |
|  | St Cloud Refrigeration | $ 43,957.29 |

Labor to move and stock shelves:

|  |  |  |
|---|---|---|
|  | Affiliated Foods | $ 2,800.00 |
|  | Jones Food Center | $ 7,761.26 |

Miscellaneous bills:

|  |  |  |
|---|---|---|
|  | Novak sanitary service | $   961.88 |
|  | Lelox Petroleum fuel for refer to keep products frozen | $   370.16 |
|  | Muzak moving system | $ 3,175.00 |
|  | City of Parker - electricity During set-up of cases and store | $ 3,098.23 |
| Total Extra Expense |  | $365,879.35 |

Stan – please let me know as soon as possible what to do with the other equipment as we are donating the building to the city and they would like to get it torn down this fall.

Gregg Peters

Come in for our prices. Come back for our quality.

Exhibit 1

**Allied Insurance**
a Nationwide® company
On Your Side℠

**Lincoln Regional Office Claim Dept.**
3820 109th St., Dept. 5575
Des Moines, IA 50391-5575
402-467-2381
FAX 800-742-1339

November 28, 2005

Craig K. Thompson
Craig K. Thompson Law Office
109 Kidder Street
P. O. Box 295
Vermillion, SD 57069-0295

RE:  Our Claim No.: 40-A80615
Our Insured: Jones Food
Center, Parker, SD
D/Loss: 6-24-03
Policy No.: ACP BPR 7211011283

Dear Mr. Thompson:

After review of your client's demand for $365,879.35 in extra expense coverage as a result of tornado damage sustained on 6-24-03, we have determined the following:

1. Per the "memorandum of understanding" we will allow for shelving, including the material cost and set up, only for the equivalent lineal feet of shelving that was at the old location. This is being done to honor the "memorandum of understanding" only.

2. The other costs being claimed do not constitute Extra Expense. Most, if not all, remaining items are associated building repair costs. The memorandum specifically states the dollar amount we agreed as the damage to the building. The policy definition for "Building" includes machinery and equipment that is permanently installed. This includes appliances used for refrigeration. The buying and installation of this new equipment did nothing to mitigate the loss of business income, as the old store was closed only a day and a half prior to the opening of the new store. If you wish to send documentation supporting 1.5 days of BI loss, we would consider that claim.

3. We feel the insured is time barred from filing suit on this claim. The "memorandum" allows for an extension of 1 year from date of "memo" to file suit. The one year has since passed.

To determine the value of the "extra expense" claim please provide us with the per foot cost of newly acquired shelving which includes the set up time, and the lineal feet of

Exhibit 2



**Allied Insurance**
a Nationwide® company
On Your Side™

Lincoln Regional Office Claim Dept.
3820 109th St., Dept. 5575
Des Moines, IA  50391-5575
402-467-2381
FAX 800-742-1339

shelving that was used in the old location.  In addition, provide us with the records we need to determine the daily loss of business income for the time the business was closed.

Please contact me at your earliest convenience.

Regards,

Stan Logan
Master Claims Representative
AMCO Insurance Company,
a member of Nationwide Insurance Company

bf/14

## MEMORANDUM OF UNDERSTANDING

**WHEREAS**, Jones Food Center of Parker, South Dakota, carried a Premiere Business Owner's Property Coverage Policy no. ACP BPR 72-1-1011283 with AMCO Insurance Company; and

**WHEREAS**, the Jones Food Center in Parker, South Dakota, sustained damage from a tornado on June 24, 2003; and

**WHEREAS**, Tellinghuisen, Inc. of Sioux Falls, South Dakota, has presented an estimated bid for repairs to the Jones Food Center premises in the amount of $476,394.69; and

**WHEREAS**, Jones Food Center of Parker and AMCO Insurance have agreed that the $476,394.69 amount represents the amount of physical damage to the Jones Food Center property, in addition to a payment of $15,000 representing the cost of real estate acquisition; and

**WHEREAS**, the parties have agreed that the insured shall be allowed to procure a new building site and construct a new physical structure for the food center, and AMCO agrees to waive any policy requirement that the building be repaired at the "same premises";

**NOW, THEREFORE**, it is hereby agreed and understood between the parties as follows:

1. The Tellinghuisen estimate in the amount of $476,394.69 shall be the primary property damage amount of the claim to be paid by AMCO to the insured Jones Food Center. Payment will be made in the following manner and at the following times:

   A. $190,557.88 to be paid upon execution of this agreement or within three (3) days thereof;

   B. An additional sum not to exceed $285,836.81 shall be paid to the insured in periodic monthly payments based on documentation of expenses which insured agrees to submit to AMCO on a monthly basis. AMCO will not be responsible for paying any portion of the additional $285,836.81 unless and until insured provides documentation that the $190,557.88 made in the initial payment has been expended. Thereafter, AMCO will reimburse insured on a monthly basis for additional amounts in excess of $190,557.88 but not to exceed an additional $285,836.81 based on the documentation furnished by insured to AMCO.

   C. The additional sum of $15,000.00 representing the cost of real estate acquisition. This amount will be paid by AMCO to insured when documentation relating to the real estate acquisition has been furnished by insured to AMCO.

Exhibit 3

  D. The insured shall be entitled to other coverages under the policy, including but not necessarily limited to the "loss of business" provision, as well as the "extra expense" provision. Benefits payable under these coverages shall be paid according to the terms and conditions of the policy. It is contemplated that the loss of business provision will not exceed two (2) to three (3) weeks.

 2. It is further agreed and understood by the parties that the insured may, if it chooses, purchase new shelving in an effort in part to minimize the time in which the insured's business is closed. If insured purchases such new shelving, all or a portion of that shelving which is purchased may have the effect of mitigating the insurer's responsibility for "loss of business" income, and the cost of the new shelving may in whole or in part constitute "extra expense" under the terms and conditions of the policy. All or a portion of the cost of this new shelving, therefore, may be payable by AMCO to the insured as an "extra expense." The determination as to whether or not all or a portion of the cost of the shelving will be payable by AMCO to the insured will be governed by the terms and conditions of the policy and the facts and circumstances surrounding the purchase of the new shelving.

 3. It is further agreed and understood that the insurer will waive or extend the following:

  A. The one (1) year requirement to sue contained on page 25 of the policy in Section E(4) as it relates to payment of the actual physical loss shall be extended one (1) year from the date of this agreement.

  B. The provision H(3) on page 8 pertaining to "extra expenses" having to be paid within twelve (12) months of the loss shall be waived.

  C. The provision in G(1) requiring loss of "business income" to be paid within twelve (12) consecutive months after the date of direct physical loss or damage shall be waived.

  D. The requirement that the repairs to be made on the "same premises" above shall be waived as stated above.

 4. It is further agreed and understood that liability coverage presently existing on the existing Jones Food Center premises shall continue in force until the new store is built and occupied or until the policy otherwise terminates for any reason, whichever shall come first.

2

5. It is further agreed and understood that the insurer will not pay or be responsible for the demolition of the existing building; however, the insured shall be entitled to retain ownership of the existing building and the real estate upon which it is located.

DATED this 7th day of June, 2004.

<div style="text-align: right;">
JONES FOOD CENTER OF PARKER, SOUTH DAKOTA

BY: *Gregg Peters by Nikki Peters*
Gregg Peters
By Nikki Peters, his duly authorized
and constituted power of attorney
INSURED

*Nikki Peters*
Nikki Peters
INSURED
</div>

DATED this 20 day of June, 2004.

<div style="text-align: right;">
AMCO INSURANCE COMPANY

BY: *Dan Olson*
Dan Olson, CPCU
Claims Representative
INSURER
</div>

3